IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
APR 27 2012
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

| | |
|---|---|
| JUDY ANNE GORDON<br>3371 Lox Street<br>Indian Head, Maryland 20640<br><br>　　　　　　　　　　*Plaintiff,*<br>v.<br><br>UNITED STATES CAPITOL POLICE<br>119 D Street Northeast<br>Washington, DC  20510-0119<br><br>　　　　　　　　　　*Defendant.* | Case: 1:12-cv-00671<br>Assigned To : Leon, Richard J<br>Assign. Date : 4/27/2012<br>Description: General Civil<br><br>PLAINTIFF DEMANDS TRIAL BY JURY |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

### I. INTRODUCTION

JUDY ANNE GORDON ("Officer Gordon" or "Plaintiff" hereinafter) brings this action against her employer, the UNITED STATES CAPITOL POLICE ("USCP", "Department" or "Defendant" hereinafter), for its violations of Sections 202(a)(1) of the Congressional Accountability Act.

### II. JURISDICTION AND VENUE

1. The subject matter jurisdiction of this Court is invoked pursuant to the provisions of 2 U.S.C. §1408(a).  Officer Gordon: (1) is a covered employee by virtue of her position with the USCP (a covered employing agency); (2) completed counseling and mediation pursuant 2 USC §§ 1402-03; and (3) received notice of the end of mediation on February 1, 2012.

2. Personal jurisdiction is invoked pursuant to the provisions of 2 U.S.C. § 1408(b).

### III. THE PARTIES

3. Officer Gordon prior to, during, and after the incidents which give rise to this complaint was a resident of Indian Hill, Maryland.

4. Officer Gordon prior to, during, and after the incidents which give rise to this complaint was an employee of the United States Capitol Police.

5. Defendant United States Capitol Police is a United States Government legislative agency primarily located on the United States Capitol Complex.

6. Defendant is an employer subject to the Family and Medical Leave Act as applied by the Congressional Accountability Act.

## IV.  FACTUAL ALLEGATIONS

7. Officer Gordon is an employee with the USCP who is assigned to the USCP's Uniformed Services Bureau Capitol Division Section 1 (hereinafter referred to as "C-1") and works from 2300-0700 hours.

8. Officer Gordon is employed as a uniform officer and carries the rank of Private First Class.

9. On October 27, 2010, Officer Gordon's husband committed suicide by an intentional gunshot wound.

10. After grieving, Officer Gordon returned to work on January 5, 2011.

11. At all times relevant herein, the USCP had in place a system whereby officers with chronic or recurring conditions could obtain a pre-approved bank of hours of Family and Medical Leave Act (hereinafter referred to as "FMLA") leave without establishing specific start and end dates for such leave.

12. On May 6, 2011, Officer Gordon submitted paperwork requesting FMLA leave to the USCP Office of Human Resources (hereinafter referred to as "OHR").

13. Officer Gordon's FMLA paperwork included a medical certification stating that she experienced intermittent periods of severe and incapacitating depression arising from the death

of her husband.

14. On May 20, 2011, Officer Gordon was notified by OHR that her FMLA request was approved for 240 hours of leave as of May 23, 2011.

15. On Wednesday, July 20, 2011, Officer Gordon reported to the C-1 break room for roll call to start her regular tour of duty.

16. During roll call and in front of several USCP officers, Sergeant Stephen Merle ordered Officer Gordon to report to Captain Darron Bloxson in the Capitol Division Detail Office.

17. Officer Gordon reported to Captain Bloxson and found Lieutenant Kevin Gildea also present in the room.

18. Captain Bloxson informed Officer Gordon that her police powers were revoked pending a fitness for duty exam (hereinafter referred to as an "FFDE").

19. Captain Bloxson notified Officer Gordon that the facts supporting her FMLA medical certification were the basis for the FFDE.

20. After receiving notification from Captain Bloxson, Officer Gordon was permitted to be represented by her union representative, Fraternal Order of Police/USCP Labor Committee (hereinafter referred to as the "FOP") C-1 Shop Steward Jodie Penny.

21. Upon arrival of Shop Steward Penny, Captain Bloxson reiterated the basis for Officer Gordon's revocation of police powers and FFDE.

22. During, Captain Bloxson directed Officer Gordon to contact Mary Rhone at OHR on Monday July 25, 2012, to receive a light duty assignment and schedule the FFDE.

23. In the interim, Officer Gordon was to work an administrative position during her regular tour of duty.

24. Captain Bloxson told Officer Gordon she was not permitted to work any overtime while

she was on restricted duty.

25. As a result, Officer Gordon was unable to work two days of scheduled overtime.

26. When pressed by Officer Penny, Captain Bloxson stated that Uniform Service Bureau Commander Deputy Chief Fredinal Rogers, Capitol Division Commander Inspector Donald Rouiller, and he made the decision to revoke Officer Gordon's police powers and subject her to an FFDE.

27. When further pressed, Captain Bloxson tried to give an example of the cause for concern and made the statement, "what if she's experiencing this severe depression and decided to pick up something?"

28. Officer Gordon signed her paperwork and remained in the Capitol Division Detail Office for the remainder of her tour performing administrative work.

29. On Thursday morning, July 21, 2012, at the end of her tour of duty Captain Bloxson told Officer Gordon that Inspector Rouiller was mad because officers were granted FMLA requests without his knowledge.

30. Captain Bloxson further stated that Inspector Rouiller made the comment that he planned to take issue with the next FMLA requested which was granted without his knowledge.

31. Upon receiving Officer Gordon's paperwork, Captain Bloxson disclosed that Inspector Rouiller stated he was mad and was going to find a problem with her FMLA request.

32. Upon finishing her tour of duty, Officer Gordon called Ms. Rhone to schedule the FFDE exam.

33. Ms. Rhone stated Elizabeth McBride with the Employee Assistant Program would discuss this matter with Officer Gordon.

34. When contacted by Ms. McBride later Thursday morning, Officer Gordon disclosed she

had a regularly scheduled appointment that day with her therapist, licensed clinical social worker Valerie J. Fortune.

35. Ms. McBride requested Officer Gordon execute a waiver authorizing Ms. Fortune to discuss the matter with Ms. McBride after Officer Gordon's appointment.

36. Ms. McBride further directed Officer Gordon to meet with her after Officer Gordon's therapy appointment.

37. After the appointment, Ms. Fortune contacted Ms. McBride to discuss Officer Gordon's medical condition.

38. At the conclusion of the conversation, Ms. McBride requested that Ms. Fortune put her diagnosis in writing and fax it to Ms. Rhone.

39. Further, Officer Gordon was no longer required to meet with Ms. McBride.

40. Friday morning, July 22nd, 2012, Officer Gordon was notified that Doctor Neil S. Hibler, previously unknown to Officer Gordon, had additional questions in her matter to be addressed through completion of a form before she could return to full duty.

41. Ms. Fortune completed the provided form and faxed it back to OHR where the form was forwarded to Dr. Hibler.

42. Friday afternoon, Officer Gordon was contacted by OHR and was told that Dr. Hibler wanted to see her on Monday.

43. On Monday morning, July 25th, 2012, more than five full calendar days, and three business days, following the revocation of her police powers, Officer Gordon, accompanied by FOP Secretary Greg Baird as her Union representative, met with Deputy Chief Rogers for her duty status conference.

44. Upon information and belief, Officer Gordon alleges that Defendant has an established

practice of requiring such a duty status conference to be held by the next business day following the revocation of an officer's police powers.

45. Deputy Chief Rogers stated that Officer Gordon's police powers would not be reinstated until she had passed her fitness for duty exam.

46. Officer Gordon met with Dr. Hibler later that morning.

47. Officer Gordon completed Dr. Hibler's examination, consisting of answering more than 900 written questions and an interview with Dr. Hibler.

48. After completing the exam, Dr. Hibler determined Officer Gordon was fit for duty.

49. The following night Tuesday, July 26, 2012, Officer Gordon's police powers were reinstated by Captain Bloxson.

50. On September 28, 2011, Officer Gordon's sister past away.

51. Officer Gordon immediately travelled to Georgia to handle family matters relating to the death of her sister.

52. On October 10 2011, Officer Gordon returned to work.

53. On October 16, 2011, Sergeant Merle notified Officer Gordon that she was assigned to an active shooter training course on October 18-20 which required Officer Gordon to report for duty during daytime hours.

54. Officer Gordon explained to Sergeant Merle that due to the stress of her sister's death and the upcoming anniversary of her husband's demise she was not in the best mental condition.

55. Officer Gordon further disclosed that she had missed an appointment with Ms. Fortune while tending to her sister's funeral and the earliest appointment Officer Gordon could schedule with Ms. Fortune was October 19th during the training course.

56. Officer Gordon requested her training be rescheduled to accommodate this appointment.

57. Officer Gordon had not used any of her pre-approved FMLA leave nor had she sought any other accommodation relating to her therapy appointments prior to this time.

58. Sergeant Merle became irate and refused Officer Gordon's FMLA request.

59. Sergeant Merle, later in the conversation, demanded that Officer Gordon provide a doctor's note to justify the request prior to granting permission.

60. Officer Gordon was surprised because C-1 managers frequently reschedule officers for active shooter training courses merely upon request and without need of justifying documentation.

61. Eventually, Sergeant Merle finally relented and permitted Officer Gordon to attend her appointment with Ms. Fortune.

62. Officer Gordon was deprived of wages she would have earned working overtime.

63. Officer Gordon was deprived of her police powers, placed on a light duty administrative assignment, and subjected to an FFDE, the record of which will be detrimental to her ability to obtain salary increases, promotions and/or transfers.

64. Officer Gordon was required to incur travel expenses, including fuel costs and vehicle wear and tear, to visit Dr. Hibler.

## V. STATEMENT OF CLAIMS

### COUNT I
### Violations of the Family and Medical Leave Act
(Interference – Exercise of Rights [29 U.S.C. § 2615(a)(1))

65. The foregoing paragraphs are incorporated herein as if set forth in full.

66. Plaintiff was an eligible employee under the definitional terms of the Family and Medical Leave Act, 29 U.S.C. § 2611(2)(a)(i)(ii), as applied by the Congressional Accountability Act, 2 U.S.C. § 1312(a)(2)(B).

67. At the time of Plaintiff's request for FMLA pre-approved leave (May 20, 2011), her attempts to use pre-approved leave, and her actual use of such leave herein, if any, Plaintiff had been employed by Defendant for at least twelve (12) months.

68. Further, Plaintiff had worked at least 1,250 hours for Defendant during the twelve (12) months prior to her request for FMLA pre-approved leave (May 20, 2011), her attempts to use pre-approved leave, and her actual use of leave herein.

69. Plaintiff requested FMLA pre-approved leave for a serious health condition in May of 2011.

70. Plaintiff's illness, severe depression, constitutes a serious health condition within the meaning of the FMLA.

71. Plaintiff's serious health condition has resulted in episodes of incapacity of varying lengths, at least one of which lasted for more than three days.

72. Plaintiff's serious health condition has required more than two treatments per year.

73. Plaintiff's serious health condition is a condition requiring multiple treatments and is likely to result in a period of incapacity of Plaintiff of more than three consecutive days in the absence of such treatment.

74. Plaintiff was entitled to request and receive leave pursuant to FMLA and Defendant was not permitted to interfere with Plaintiff's exercise of her rights under FMLA.

75. Defendant interfered with Plaintiff's rights by revoking her police powers because Plaintiff had requested pre-approved FMLA leave.

76. Defendant further interfered with Plaintiff's rights by arranging for Plaintiff's duty status conference to be held on a date later than allowed by Defendant's established practice and/or policy.

77. Defendant further interfered with Plaintiff's rights by repeatedly requiring Plaintiff to obtain additional, unnecessary documentation from her healthcare provider because Plaintiff had requested pre-approved FMLA leave.

78. Defendant further interfered with Plaintiff's rights by requiring Plaintiff to submit to an FFDE because Plaintiff had requested pre-approved FMLA leave.

79. Defendant interfered with Plaintiff's rights by refusing Plaintiff the use of her pre-approved FMLA leave to keep her therapist appointment on October 19, 2011.

80. Defendant further interfered with Plaintiff's rights by requiring Plaintiff to produce medical documentation that had already been provided to Defendant before considering allowing Plaintiff to use FMLA leave to keep her therapist appointment on October 19, 2011.

81. Defendant did not act in good faith as to any FMLA violations alleged herein Count I.

## COUNT II
### Violations of the Family and Medical Leave Act
(Interference – Discrimination/Retaliation [29 U.S.C. § 2615(a)(2))

82. The foregoing paragraphs are incorporated herein as if set forth in full.

83. Defendant retaliated against Plaintiff for requesting pre-approved FMLA leave in May 2011 by revoking her police powers.

84. Defendant further retaliated against Plaintiff by arranging for Plaintiff's duty status conference to be held on a date later than allowed by Defendant's established practice and/or policy.

85. Defendant retaliated against Plaintiff for requesting pre-approved FMLA leave in May 2011 by repeatedly requiring Plaintiff to obtain additional, unnecessary documentation from her healthcare provider.

86. Defendant retaliated against Plaintiff for requesting pre-approved FMLA leave in May

2011 by requiring Plaintiff to submit to an FFDE.

87. Defendant retaliated against Plaintiff by refusing Plaintiff the use of her pre-approved FMLA leave to keep her therapist appointment on October 19, 2011.

88. Defendant further retaliated against Plaintiff by requiring Plaintiff to produce medical documentation that had already been provided to Defendant before considering allowing Plaintiff to use FMLA leave to keep her therapist appointment on October 19, 2011.

89. Defendant did not act in good faith as to any FMLA violations alleged herein Count II.

## VI. PRAYER FOR RELIEF

90. WHEREFORE, Officer Gordon requests:

91. Damages for wages denied Plaintiff for two days of overtime Plaintiff was prevented from working in the amount of eight hundred fifty dollars ($850.00), according to proof;

92. Damages in the amount of travel and other expenses incurred by Plaintiff in the amount of fifty dollars ($50.00), according to proof;

93. Interest on the amount of damages set forth in paragraphs 82 and 83 at the prevailing rate and according to proof;

94. Liquidated damages equal and in addition to the amount of damages and interest stated in paragraphs 91-93, as provided for in 29 U.S.C. § 2617(a)(1)(A)(iii);

95. An order requiring Defendant to remove from all employee personnel and medical files pertaining to Plaintiff any record of: (1) Plaintiff having been subjected to the July 2011 revocation of her police powers; (2) Plaintiff having been subjected to the July FFDE; (3) Plaintiff's therapist having provided documentation to Defendant during said period of revocation; (4) Plaintiff having provided additional documentation to Defendant during said period of revocation.

96. An order prohibiting Defendant from considering any of the items or events listed in paragraph 86 as negative factors in evaluating Plaintiff for future employment, promotion, wage increase, educational, training and/or similar opportunities, or for any transfers requested by Plaintiff.

97. Attorney's fees, expert fees, and other costs according to proof

98. Such other and further equitable and legal relief as the Court deems just, proper, and appropriate.

Respectfully Submitted,

*Donald A. MacKay*  # 95316
Donald A. MacKay
Attorney at Law
1320 G Street S.E.
Washington, DC  20003-3021
Phone: 202-642-4646
Fax: 866-365-8821
Email: don@damackay.com